**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND; INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS DEFINED CONTRIBUTION PENSION FUND; INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND; INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS JOINT APPRENTICESHIP AND TRAINING FUND; and CENTRAL MIDWEST REGIONAL COUNCIL OF CARPENTERS, <br><br>      Plaintiffs, <br><br>vs. <br><br>AMERICAN FLOOR COVERING, INC., an Indiana corporation; and LAURA EVINGER, an individual, <br><br>      Defendants. | Case No.: |

## COMPLAINT

NOW COME the Plaintiffs, the INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND, the INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS DEFINED CONTRIBUTION PENSION FUND, the INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, the INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS JOINT APPRENTICESHIP AND TRAINING FUND ("collectively, the "Trust Funds"), and the CENTRAL MIDWEST REGIONAL COUNCIL OF CARPENTERS ("Union") (the Trust Funds and Union collectively referred to as "Plaintiffs"), by and through their attorneys, JOHNSON & KROL, LLC, complaining of the Defendants AMERICAN FLOOR COVERING, INC. ("AFC"),

and LAURA EVINGER ("Evinger") (collectively, "Defendants"), and for their Complaint, allege as follows:

## JURISDICTION AND VENUE

1. Counts I and II of this action arise under Section 502 and 515 of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") (29 U.S.C. §§ 1132 and 1145) and Section 301 of the Labor-Management Relations Act. (29 U.S.C. § 185). The Court has jurisdiction over the subject matter of the action pursuant to 29 U.S.C. §§ 185(c), 1132(e)(1), and 1145, as well as 28 U.S.C. § 1331.

2. Count III of this action alleges common law tortious conversion against the individual Defendant. The Court has supplemental jurisdiction over the subject matter of Count III pursuant to 28 U.S.C. § 1367.

3. Count IV of this action arises under Ind. Code § 34-23-4-1 ("Indiana's Civil Conversion Statute") and alleges civil conversion against the individual Defendant. The Court has supplemental jurisdiction over the subject matter of Count IV pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 29 U.S.C. & 1132(e)(2) in that the Trust Funds are administered, among other places, within the jurisdiction of the United States District Court, Southern District of Indiana, Indianapolis Division and a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred within the jurisdiction of the United States District Court, Southern District of Indiana, Indianapolis Division.

## PARTIES

5. The Trust Funds receive contributions from numerous employers pursuant to collective bargaining agreements ("CBAs"), and therefore, are multiemployer benefit plans as defined by 29 U.S.C. § 1002(37).

6. The Trust Funds were established and are administered pursuant to the terms and provisions of certain Agreements and Declarations of Trust ("Trust Agreements").

7. Pursuant to Sections 502(a)(3) and 515 of ERISA (29 U.S.C. §§ 1132 and 1145), the Trust Funds are authorized to bring this action on behalf of their participants and beneficiaries for the purpose of collecting unpaid contributions.

8. The Union is a labor organization whose duly authorized officers or agents are engaged in representing or acting for employee members within this judicial district.

9. The Union is the bargaining representative of AFC's bargaining unit employees ("covered employees").

10. AFC is an Indiana corporation with its principal place of business in Plainfield, Indiana.

11. Evinger is an individual with her principal residence in Plainfeild, Indiana.

## FACTS COMMON TO ALL COUNTS

12. AFC is an employer engaged in an industry affecting commerce.

13. Through a Memorandum of Agreement ("MOA"), AFC agreed to be bound by the Union's various CBAs. (A copy of the MOA is attached as **Exhibit 1**).

14. Through the MOA and CBAs, AFC agreed to be bound by the Trust Funds' Trust Agreements.

15. Pursuant to the provisions of the CBAs and Trust Agreements, AFC is required to make monthly reports of the number of hours worked by its covered employees ("monthly remittance reports") and pay contributions to the Trust Funds and wage deductions to the Union on or before the twentieth (20th) day following the month in which the work is performed (hereinafter referred to as "due date").

16. Pursuant to the power granted to them through the Trust Agreements, the Trustees of the Trust Funds adopted a Collections and Payroll Audit Policy ("Collections/Audit Policy") which governs the collection of delinquent employer contributions and the performance of payroll compliance audits. (A copy of the Collections/Audit Policy is attached as **Exhibit 2**).

17. Pursuant to Section 502(g)(2) of ERISA, the Collections/Audit Policy, and the Trust Agreements, employers who fail to submit their monthly remittance reports and remit contributions to the Trust Funds are responsible for the payment of liquidated damages, interest, and attorneys' fees and costs associated with the collection of the delinquent contributions.

18. On March 4, 2025, AFC and Evinger entered into an Installment Payment Agreement ("Payment Agreement") with the Trust Funds and Union. (A copy of the Payment Agreement is attached as **Exhibit 3**).

19. Paragraph 8 of the Payment Agreement provides:

> Evinger agrees to be personally liable for all of the obligations of AFC called for in this Agreement, including all payments required by Paragraphs 2 and 4 above and all ongoing contributions, wage deductions, liquidated damages, interest, attorneys' fees, audit fees, and audit deficiencies that may become due and owing during the duration of this Agreement. Evinger agrees that she is personally bound by the CBA and agrees that she is a joint employer with AFC for the purposes of 29 U.S.C. § 1145.

(**Exhibit 3**).

## COUNT I
## BREACH OF CBAs – MONTHLY REMITTANCE REPORTS AND PAYMENTS

20. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-20 of this Complaint with the same force and effect as if fully set forth herein.

21. AFC and Evinger failed to timely remit their monthly remittance reports and payments for the work months of September 2024 through February 2025.

22. Due to their failure to timely submit their monthly remittance reports and payments for the period of September 2024 through February 2025, AFC and Evinger owe Plaintiffs unpaid contributions, wage deductions, interest, and liquidated damages in the aggregate amount of $519,425.46, itemized below:

| Month | Type: | Amount: |
|---|---|---|
| September 2024 | Interest | $3,126.83 |
| October 2024 | Interest | $4,292.25 |
| November 2024 | Interest | $2,032.22 |
| November 2024 | Liquidated Damages | $8,403.95 |
| December 2024 | Contributions/Wage Deductions | $84,499.35 |
| December 2024 | Interest | $11,131.42 |
| December 2024 | Liquidated Damages | $11,131.42 |
| January 2025 | Contributions/Wage Deductions | $195,568.18 |
| January 2025 | Interest | $19,556.82 |
| January 2025 | Liquidated Damages | $19,556.82 |
| February 2025 | Contributions/Wage Deductions | $160,126.20 |
| **TOTAL:** | | **$519,425.46** |

23. AFC and Evinger have a continuing obligation to submit monthly remittance reports and pay contributions and wage deductions to Plaintiffs and, as a result, additional monies may be owed.

24. Plaintiffs have been required to employ the undersigned attorneys to collect the monies that are due and owing from AFC and Evinger.

25. AFC and Evinger are obligated to pay the reasonable attorneys' fees and court costs incurred by Plaintiffs pursuant to the CBAs, Trust Agreements, Collections/Audit Policy, and 29 U.S.C. & 1132(g)(2)(D).

**WHEREFORE,** Plaintiffs respectfully request that:

A. Judgment be entered in favor of Plaintiffs and against AFC and Evinger, jointly and severally, in the aggregate amount of $519,425.46, itemized as follows:

  i. $440,193.73 in contributions and wage deductions owed to the Plaintiffs;

  ii. $40,139.54 in interest; and

  iii. $39,092.19 in liquidated damages.

B. Judgment be entered in favor of Plaintiffs and against AFC and Evinger for any other contributions, wage deductions, liquidated damages, and interest that are found to be due and owing in addition to those referenced in Paragraph A above;

C. AFC and Evinger be ordered to pay the reasonable attorneys' fees and costs incurred by Plaintiffs pursuant to the CBAs, Trust Agreements, Collections/Audit Policy, and 29 U.S.C. § 1132(g)(2)(D); and

D. Plaintiffs have such other and further relief that the Court may deem just and equitable all at Defendants' cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

## COUNT II
## BREACH OF THE INSTALLMENT PAYMENT AGREEMENT

26. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-26 of this Complaint with the same force and effect as if fully set forth herein.

27. AFC and Evinger entered into a Payment Agreement with the Trust Funds and Union for payment of the principal balance of $484,598.63 for unpaid contributions, wage deductions, liquidated damages, interest, and attorneys' fees and costs. (**Exhibit 3**).

28. Pursuant to the Payment Agreement, AFC and Evinger are required to make sixteen (16) monthly payments in the amount of $31,170.35 to the Trust Funds, beginning on March 15, 2025 and ending on June 15, 2026. (**Exhibit 3**).

29. Paragraph 4 of the Payment Agreement provides:

> AFC and Evinger further agree to submit all ongoing and future Contribution Remittance Reports and payments to the Trust Funds during the term of this Agreement in a timely manner, beginning with the Contribution Remittance Report and payment for the work period of February 2025. Failure by AFC and Evinger to submit any required Contribution Remittance Reports and payments in a timely manner shall constitute a default of this Agreement.

(**Exhibit 3**).

30. At the time the Plaintiffs and Defendants entered into the Payment Agreement, they agreed that AFC and Evinger owed the Trust Funds and Union $117,299.37 in unpaid contributions and wage deductions for February 2025. (**Exhibit 3**). AFC and Evinger later submitted their monthly remittance report for February 2025, which indicated that the total amount due for unpaid contributions and wage deductions is $160,126.20.

31. AFC and Evinger are required to timely remit an additional amount of $42,826.83 in unpaid contributions and wage deductions for February 2025, pursuant to the Payment Agreement.

32. Since entering into the Payment Agreement, the Trust Funds and Union have received payments totaling $51,037.93 to be applied to the monies due and owing from AFC and Evinger's breach of the Payment Agreement. Accordingly, AFC and Evinger currently owes the Trust Funds and Union the net amount of $498,960.08 ($507,171.18+$42,826.83= $549,998.01-$51,037.93=$498,960.08) as a result of its breach of the Payment Agreement.

33. Paragraph 10 of the Payment Agreement provides:

> In the event that AFC and/or Evinger default on any of its obligations under the terms of this Agreement, then (a) all remaining payments shall be accelerated and become immediately payable; (b) an additional liquidated damages charge of ten percent (10%) of all unpaid amounts shall become due and payable by AFC and Evinger; (c) AFC and Evinger confess judgment for any and all unpaid amounts due under this Agreement; and (d)

        in the event the Trust Funds and Union are required to engage an attorney to collect any amounts due under this Agreement, AFC and Evinger, jointly and severally, shall be liable for all reasonable attorneys' fees and costs incurred by the Trust Funds and Union.

(**Exhibit 3**).

34. AFC and Evinger failed to remit $22,959.25 for unpaid contributions and wage deductions for the work month of February 2025.

35. AFC and Evinger filed their monthly remittance reports for the work month of February 2025 but have failed to timely remit the full amount due for the corresponding payment, in breach of the Payment Agreement.

36. Pursuant to Paragraph 10 of the Payment Agreement, the Trust Funds and Union accelerated the remaining installments required by the Payment Agreement and assessed liquidated damages equal to 10% of the remaining installments. As a result, AFC and Evinger owe $498,960.08 in remaining payments and $49,896.01 in liquidated damages to the Trust Funds and Union.

37. AFC and Evinger are obligated to pay the reasonable attorneys' fees and court costs incurred by Plaintiffs pursuant to the CBAs, Trust Agreements, Collections/Audit Policy, Payment Agreement and 29 U.S.C. & 1132(g)(2)(D).

**WHEREFORE**, Plaintiffs respectfully request that:

A. Judgment be entered in favor of Plaintiffs and against AFC and Evinger, jointly and severally, in the aggregate amount of $548,856.09, which is itemized as follows:

    i. $498,960.08 in remaining payments on the Payment Agreement; and

    ii. $49,896.01 in liquidated damages for breaching the Payment Agreement.

B. AFC and Evinger be ordered to pay the reasonable attorneys' fees and costs incurred by the Plaintiffs pursuant to the CBAs, Trust Agreements, Collections/Audit Policy, Payment

Agreement, and 29 U.S.C. § 1132(g)(2)(D); and

C. Plaintiffs have such other and further relief as the Court may deem just and equitable all at the AFC and Evinger's cost, pursuant to 29 U.S.C. §1132(g)(2)(E).

## COUNT III
## COMMON LAW TORTIOUS CONVERSION V. THE INDIVIDUAL DEFENDANT

38. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-37 of this Complaint with the same force and effect as if fully set forth herein.

39. This Court has jurisdiction over this Count pursuant to 28 U.S.C. § 1367.

40. Upon information and belief, AFC made the required wage deductions from its covered employees' paychecks but failed to remit those deductions to the Union's designated depository by the due date for the period of September 2024 through February 2025.

41. The wage deductions became the property of the Union, in its representative capacity for AFC's covered employees, on the due date. Thus, the Union had an immediate, unqualified right to then possess the wage deductions based on a superior claim of title.

42. At all times material herein, Evinger was the President of AFC.

43. In such capacity Evinger was responsible for AFC's compliance with the obligations and duties set forth in the CBAs, including but not limited to ensuring that: (1) all wages were properly paid; (2) all wage deductions were properly made and withheld; and (3) all wage deductions were timely remitted to the Union's designated depository.

44. In such capacity and intending to interfere with the Union's possession, Evinger made the decision not to remit the wage deductions to the Union's designated depository by the due date for the period of September 2024 through February 2025.

45. The required wage deductions were not transmitted to the Union's designated depository by the due date. Instead, the deductions were withheld from the Union beyond the due date without authorization.

46. In such capacity, Evinger was ultimately responsible for the decision not to remit the wage deductions.

47. Evinger appropriated and exercised dominion over these wage deductions for her own and/or AFC's own use and benefit.

48. Moreover, Evinger withheld and possessed these wage deductions under a claim and title inconsistent with the Union's own, in its representative capacity on behalf of AFC's covered employees.

49. Evinger's failure to remit the wage deductions was done in exclusion, denial, and defiance of the Union's right to use and enjoy said deductions.

50. As a result of her failure to remit the wage deductions, Evinger is personally liable for the monies which should have been remitted to the Union's designated depository.

51. Evinger's actions were the legal cause of the Union's loss of the wage deductions, and the Union has suffered damage by loss of the wage deductions.

52. AFC and Evinger have a continuing obligation to pay wage deductions to the Union and, as a result, additional monies may be owed.

**WHEREFORE**, Plaintiff Union respectfully requests that:

A. Judgment be entered in favor of the Union and against Evinger, in the amount of $440,193.73 for unpaid wage deductions owed to the Union for the period of September 2024 through February 2025;

B. Judgment be entered in favor of the Union and against Evinger for any other wage

      deductions found to be due and owing in addition to those referenced in Paragraph A above;

C.    Evinger be ordered to pay all statutory post-judgment interest on principal wage deductions found due by this Order;

D.    Evinger be ordered to pay the Union's attorneys' fees and costs incurred herein; and

E.    The Union have such other and further relief as the Court may deem just and equitable all at the cost of Evinger.

## COUNT IV
## CONVERSION: CIVIL CAUSE OF ACTION
## FOR CRIMINAL CONVERSION PURSUANT TO I.C. 34-24-3-1

53.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-52 of this Complaint with the same force and effect as if fully set forth herein.

54.    This Court has jurisdiction over this Count pursuant to 28 U.S.C. § 1367.

55.    Upon information and belief, AFC made the required wage deductions from its covered employees' paychecks but failed to remit those deductions to the Union's designated depository by the due date for the period of September 2024 through February 2025.

56.    The wage deductions became the property of the Union, in its representative capacity for AFC's covered employees, on the due date. Thus, the Union had an immediate, unqualified right to then possess the deductions based on a superior claim of title.

57.    At all times material herein, Evinger was the President of AFC.

58.    In such capacity and intending to interfere with the Union's possession, Evinger made the decision not to remit the wage deductions to the Union's designated depository by the due date for the period of September 2024 through February 2025.

59. The required wage deductions were not transmitted to the Union's designated depository by the due date. Instead, the deductions were withheld from the Union beyond the due date without authorization.

60. A civil action under the criminal conversion statute is permitted Indiana's Civil Conversion Statute, which provides that:

"If a person has an unpaid claim on a liability that is covered by IC 24- 4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3- 3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times:

   (A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5; or . . . .

(2) The costs of the action.

(3) A reasonable attorney's fee. . . .

(7) All other reasonable costs of collection."

Ind. Code § 34-24-3.

61. Pursuant to Indiana's Civil Conversion Statute, the amounts deducted from the covered employees' paychecks constitute a specific chattel that AFC was entrusted to apply for the specific purpose of paying the Union's designated depository on behalf of AFC's covered employees from whose wages the deductions were taken.

62. The deliberate and intentional non-payment/withholding and failure to timely remit the wage deductions to the Union's designated depository constitutes a wrongful taking and conversion of the wage deductions.

63. In the State of Indiana, "a person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Ind. Code § 35-43-4-3 (a).

64. Evinger knew she was required to remit the wage deductions to the Union's designated depository by the due date but withheld the wage deductions beyond the due date without authorization and for their own and/or AFC's own purpose(s).

65. Evinger thereby knowingly and intentionally exerted unauthorized control over the management and disposition of all monies deducted from the paychecks of AFC's covered employees.

66. The Union and AFC's covered employees suffered a pecuniary loss because of Evinger's violation.

67. Because the civil conversion statute applies to the amounts owed to the Union in its representative capacity, the Union is entitled to an award under Indiana's Civil Conversion Statute not to exceed three (3) times the actual loss, the costs of this action, and a reasonable attorneys' fee.

**WHEREFORE,** Plaintiff Union respectfully requests that:

A. Judgment be entered in favor of the Union and against Evinger, in the amount of $440,193.73 for unpaid wage deductions owed to the Union for the period of September 2024 through February 2025;

B. Judgment be entered in favor of the Union and against Evinger for any other wage deductions found to be due and owing in addition to those referenced in Paragraph A above;

C. Evinger be ordered to pay statutory post-judgment interest on principal deductions as found due by this Order;

D.  Evinger be ordered to pay treble damages for the statutory conversion of the total deductions found due by this Order;

E.  Evinger be ordered to pay the Union's attorneys' fees and costs incurred herein; and

F.  The Union have such other and further relief as the Court may deem just and equitable all at the cost of Evinger.

Respectfully submitted,

**INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND** *et al.*

/s/ Natalya J. Cross
Natalya J. Cross (36423-49)
JOHNSON & KROL, LLC
450 East 96th Street, Suite 500
Indianapolis, Indiana 46240
Phone: (317) 864-3587
Facsimile: (312) 255-0449
cross@johnsonkrol.com

*One of Plaintiffs' Attorneys*